In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00039-CR
______________________________


DARREN KEITH JAMES, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 03-0355X


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Darren Keith James appeals from his convictions on five counts of aggravated
sexual assault of a child


 and two counts of prohibited sexual conduct.


 He was convicted
by a jury, which assessed punishment at twenty years' imprisonment on each count for the
aggravated sexual assault convictions and ten years' imprisonment on each count for the
prohibited sexual conduct convictions. At the time of one of the alleged aggravated sexual
assaults, the child, L.C., James' stepdaughter, was five years of age and James was thirty-one. L.C. was around twelve years of age and James around thirty-eight at the time of all
the other alleged offenses. 
          James first contends the act alleged in one of the counts for aggravated sexual
assault—that, in 1996, he caused the penetration of the mouth of the child by his sexual
organ—was not specifically criminalized by the Penal Code on that date, and that
application of the current law to the act then committed is not appropriate. James'
argument relies on the 1997 amendment of the statute. That amendment added a
subsection stating that a person commits an offense if the person "causes the mouth of
a child to contact the anus or sexual organ of another person . . . ." Tex. Pen. Code Ann.
§ 22.021(a)(1)(B)(v) (Vernon Supp. 2004–2005) (Act of May 28, 1997, 75th Leg., R.S.,
ch. 1286, § 2, 1997 Tex. Gen. Laws 4911, 4912 (effective Sept. 1, 1997)). The prior law
stated it was an offense if the person caused the penetration of the mouth of the child by
the sexual organ of the actor. See Act of May 26, 1987, 70th Leg., R.S., ch. 573, § 1, 1987
Tex. Gen. Laws 2275. 
          In this case, the allegation in the indictment that James penetrated the mouth of the
child was pursuant to a provision in the Penal Code, Section 22.021(a)(1)(B)(ii), that was
the same in 1996 as it was after the 1997 amendment. He was not charged under the
1997 amendment. The conviction was therefore for an act that was criminal at the time of
its commission. The contention of error is overruled.
          James next contends the court erred by allowing him to be tried for two counts
alleging that, on or about September 6, 2003, and on or about August 24, 2003, he caused
the penetration of the female child's sexual organ by his own sexual organ, at the same
time as he was tried for two additional counts alleging that, on the same dates, he engaged
in sexual intercourse with a person (the same named child) he knew to be, without regard
to legitimacy, his stepchild. James alleges this was error because to try him in this manner
constituted a violation of the Double Jeopardy Clause of the United States and Texas
Constitutions. 
          James argues that this constitutes nothing more than being punished twice for the
same act. The Texas Court of Criminal Appeals has stated that double jeopardy in the
context of a multiple punishment claim must be raised before the trial court to be preserved
for review on direct appeal. Gonzalez v. State, 8 S.W.3d 640 (Tex. Crim. App. 2000). The
court recognized the difficulty in analyzing its prior opinions on the topic, but then
attempted to create a moderately bright-line rule. In so doing, the court held that an
appellant is required to timely bring an allegation of multiple punishments to the attention
of the trial court in order to preserve that type of double jeopardy claim for appellate review. 
Id. at 645–46. A double jeopardy claim may, however, be raised for the first time on
appeal (or for the first time on collateral attack) when (1) the undisputed facts show the
double jeopardy violation is clearly apparent on the face of the record, and when (2) the
enforcement of the usual rules of procedural default serves no legitimate state interests. 
King v. State, 161 S.W.3d 264, 268 (Tex. App.—Texarkana 2005, pet. filed) (citing
Gonzalez, 8 S.W.3d at 643). 
          In this case, James' claim of double jeopardy was not presented to the trial court. 
Therefore, because such claim on appeal is one of multiple punishments, because the
alleged double jeopardy violation is not clearly apparent on the face of the record, and
because enforcement of the usual rules of procedural default do serve legitimate state
interests in this context, James' claim of double jeopardy has not been preserved for our
review. The contention of error is overruled.
          James next contends the trial court erred by excluding the testimony of his fourteen-year-old son, D.W., because of D.W.'s erroneous invocation of his Fifth Amendment
privilege. The record shows that James sought to question D.W. about sexual activity
between D.W. and L.C. during the time period when D.W. was living in Waskom with
James and James' wife (D.W.'s stepmother), which D.W. defined as the time period
including his fifth-grade year in school. D.W. stated that, at the time of trial, he was
fourteen, and in the sixth grade, which would place him at twelve to thirteen years of age
while he lived with James and James' wife in Waskom. The argument raised on appeal
is that D.W. could not have legally claimed a Fifth Amendment privilege against self-incrimination because, at the time of the alleged sexual activity, D.W. was, according to
James' testimony, only nine years old, and thus not subject to prosecution under either the
penal or juvenile codes.


 At the time the testimony was disallowed, the only information
before the court was D.W.'s testimony that the allegations were of activity during a time
frame which would have placed him in jeopardy of criminal prosecution as a juvenile. 
Under those facts, we cannot say D.W. (pursuant to his attorney's advice) was unable to
afford himself of the right to avoid self-incrimination. No error has been shown. 
          James next contends the court erred by excluding testimony about L.C.'s prior
sexual activity. James complains because he was not permitted to testify that L.C. had told
him she had sex with D.W. when they were eight and nine years old, respectively. The
court excluded the testimony as hearsay. 
          We review the trial court's decision to admit or exclude evidence under an abuse
of discretion standard. Green v. State, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996); 
Montgomery v. State, 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990). We will not
reverse a ruling that is within the "zone of reasonable disagreement." Green, 934 S.W.2d
at 102; Montgomery, 810 S.W.2d at 391 (op. on reh'g); Broderick v. State, 35 S.W.3d 67,
75 (Tex. App.—Texarkana 2000, pet. ref'd).
          James contends on appeal the evidence was admissible because L.C. had informed
the nurse that L.C. had been involved in no other sexual activity (and the nurse so testified)
and the evidence of L.C.'s denial of other sexual partners had thus been placed before the
jury, thus making impeachment evidence admissible. James also suggests the evidence
should be admissible because it provides an alternative explanation for the medical
evidence of healed tears to L.C.'s hymen. 
          The State objected based on its position that the testimony was inadmissible
because it was hearsay, because there was no confirmation, and because the evidence
was of past sexual behavior and would be in violation of Tex. R. Evid. 412. The trial court
concluded it was hearsay. The court went on to state that this case was unlike the cases
the parties had previously provided for the court's review in which there was evidence
before the jury that "she [the victim] had said it in the medical records." The court then
excluded the testimony. 
          We first recognize that, if the court was suggesting there was no evidence in the
medical records about L.C.'s claim not to have engaged in other sexual behavior, that is
incorrect. We also note that the State's suggestion to the trial court that independent
confirmation is required has no support in the rules or in caselaw. 
          The State argues we should overrule the contention of error because the reasons
to admit the evidence that are raised in this appeal were not brought before the trial court
for its consideration. That argument is based on the principle that, while a court of appeals
can affirm a trial court's decision on a legal theory not presented to the trial court without
violating "ordinary notions of procedural default" (see State v. Mercado, 972 S.W.2d 75,
77–78 (Tex. Crim. App. 1998)), it does violate those notions for a court of appeals to
reverse a trial court's decision on a legal theory not presented to the trial court by the
complaining party.


 Hailey, 87 S.W.3d at 121–22.
          As applied to this case, it is apparent that the question of whether the proposed
testimony was hearsay was before the trial court, that the issue of whether it should be
excluded under Rule 412 was generally before the court, and that the question of whether
it was admissible because the issue had already been broached through medical records
was before the court. There was virtually no discussion of any of those topics at the cited
point in the record where the court heard the testimony outside the presence of the jury,
and we have been directed to no other location in the record where any other discussion
of those matters took place. 
          It is clear that the evidence is hearsay and that it was offered as proof of the matter
asserted. See Tex. R. Evid. 801. However, at trial, there was no argument made to the
court that the evidence was admissible for impeachment purposes. To have evidence
admitted under a hearsay exception, the proponent of the evidence must specify the
exception on which the proponent is relying. Willover v. State, 70 S.W.3d 841, 845 (Tex.
Crim. App. 2002). No one at trial disputed that the videotapes were hearsay. Thus, it was
up to James, not the trial court, to specify the exception to the hearsay rule on which he
was relying or to specify how the evidence was not hearsay. See id. at 845–46. 
          Similarly, Tex. R. Evid. 412 has multiple subdivisions that can be argued in different
situations to provide an exception that allows admission of evidence of specific instances
of an alleged victim's past sexual behavior. There is no specificity in connection with the
discussion of this rule, and no argument that would serve to direct the trial court to anything
other than the rule in general as a reason to admit the testimony. It is arguable that the
court's acknowledgment of the medical testimony aspect suggests the court was focusing
on this area in its review, but even if we likewise assume the focus was on that area, the
court clearly stated it did not believe that the probative value of this hearsay, elicited from
the accused, would outweigh the danger of unfair prejudice in this instance. Under the
standard we are required to apply in reviewing the admission of evidence, we do not find
this to be so far outside the zone of reasonable disagreement as to constitute error. The
contention of error is overruled.
          James next contends the conviction should be reversed because he received
ineffective assistance of counsel at trial. In this review, we use the standards as set out
in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, James must prove by a
preponderance of the evidence (1) that his counsel's representation fell below an objective
standard of reasonableness and (2) that the deficient performance prejudiced his defense. 
Id. at 688; Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this
burden, James must prove that his attorney's representation fell below the standard of
prevailing professional norms and that there is a reasonable probability that, but for his
attorney's deficiency, the result of the trial would have been different. Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that
counsel's representation so undermined the proper functioning of the adversarial process
that the trial cannot be relied on as having produced a just result. Strickland, 466 U.S. at
686. 
          As far as strategic or tactical reasons for counsel's action or inaction, in the absence
of direct evidence of counsel's reasons for the challenged conduct, we must assume a
strategic motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436, 440 (Tex.
Crim. App. 2001). 
          James contends counsel was ineffective in several respects. James first contends
counsel was ineffective because he did not object to the admission of the videotaped
interview of L.C. James also complains his counsel did not object to the admission of 
multiple "outcry" statements made to a number of other individuals.
          In the videotaped interview, L.C. explained what she claimed James had done and
the time frame. She was questioned about the living arrangements and when various
family members were present. She testified similarly at the trial and was cross-examined
at some length about how—because she shared a bedroom and a bed with two
brothers—it would be possible for the assaults to occur over a hundred times while her
brothers were asleep next to her. At that point, L.C. shifted her story to state she was
moved to the floor when the assaults happened at night. She also testified that the
bedroom window opened to a breezeway, that her brothers had broken the blinds on that
window, and that people walking by could see inside the bedroom. She also testified Child
Protective Services (CPS) had been to their home at least twenty times during the previous
six years and had questioned her each time. She admitted she never said anything to
them about sexual activity with her stepfather. 
          The complained-of witnesses all testified about variations of L.C.'s first statements
to them about James' sexual assaults. Although categorized as outcry witnesses by
counsel due to the nature of their testimony, the State did not offer their testimony as an
outcry, but simply called them as witnesses. There was evidence at trial that L.C. told her
mother, Kimberly James, first, and then told her great-grandmother Fannie Miles, both of
whom testified at trial. Melita Haynes testified L.C. came to her and told her about James
"messing with her." 
          Rex Hawsey, the Waskom Chief of Police, testified that he had investigated the
complaint and that L.C. had identified the perpetrator as James. He also testified L.C. told
him the assaults had begun with oral sex and progressed to intercourse, always early in
the morning and always in the bedroom. Hawsey also testified that, when he talked to
Kimberly, she told him she believed that L.C. was not telling the truth because "she lies all
the time." 
          Kay Carroll, the nurse who conducted the rape examination on L.C., testified about
the description of the assaults related to her by L.C. 
          Margie Bell, the instructional coordinator for Waskom Independent School District,
testified that L.C. had come to her, along with Melita Haynes, and told her that James had
sexually abused her. 
          Christy Green, a CPS representative, testified about the nine investigations
preceding the one that began because of these allegations of sexual abuse. 
          James also complains that trial counsel should have objected to the outcry
statements recounted by L.C.'s mother, because he was not provided with notice of her
testimony and a summary of that evidence as required by Tex. Code Crim. Proc. Ann. art.
38.072, § 2(b) (Vernon 2005). 
          There was testimony from two other individuals that L.C. was a chronic liar and had
stolen from homes and shoplifted from businesses, and that she was simply not to be
believed. There was also a mismatch between some of the descriptions L.C. had provided
to some of the witnesses and her testimony at trial, specifically whether the incidents
occurred only in the mornings, or both in the evenings and mornings, and whether they all
occurred on the bed or on the floor, and some doubt was thrown on the timing of the
assaults based on the time she went to school in the morning for breakfast and then took
a bus transfer to the middle school. 
          It is possible that counsel chose to let a number of people testify about the stories
they were told by L.C. in an attempt to strengthen James' defensive argument that L.C.
was a liar and to show how her story altered as time passed. As a strategic choice by trial
counsel, we are not permitted to second-guess that choice. 
          We also recognize that the videotaped interview could not have been properly
admitted under the statute had a proper objection been made. See Tex. Code Crim. Proc.
Ann. art. 38.071 (Vernon 2005); Edwards v. State, 107 S.W.3d 107, 110–11 (Tex.
App.—Texarkana 2003, pet. ref'd). However, the same reasoning set out above could also
apply to the decision to not object to the videotape in this case—to show on tape how the
story had altered somewhat as time went on. Although we are not convinced it was
necessarily the right choice, it is not apparent from this record that it was such an
unreasonable choice as to allow us to determine that it constituted ineffective assistance
of counsel.



          James next contends counsel was ineffective because he allowed the State to
introduce evidence bolstering its unimpeached witness—L.C. James points to the
testimony of the various witnesses discussed above and argues that to allow them to all
testify that L.C. had told them about the sexual activities constituted bolstering and was
thus objectionable. See Morales v. State, 2 S.W.3d 487, 488 (Tex. App.—Texarkana
1999, pet. ref'd) (discussing concept of bolstering and holding that prosecution cannot
bolster its witnesses unless they have been impeached on cross-examination, and also
recognizing that bolstering occurs when testimony's sole purpose is to enhance credibility
of another witness, without adding anything to proof of a relevant fact); Cohn v. State, 849
S.W.2d 817 (Tex. Crim. App. 1993).
          L.C. was, however, impeached in this case. There was testimony she was a liar and
a thief, and as pointed out above, her story was not entirely consistent as told to different
people. Arguably, that provides both that the evidence was not objectionable on that basis
and that there was a tactical purpose for allowing its admission. 
          As pointed out by counsel, one of the witnesses, the child's mother, testified about
the credibility of the child before the child testified and before any impeachment of the
child. She was asked by the State if she believed the story her child had told her, and she
said that she did. The State argues that no error is shown because defense counsel
vigorously cross-examined her about her testimony. That will go to a harm analysis, but
does not alter the fact that the mother's testimony was indeed nothing more than bolstering
of her child's believability, without providing any additional facts for the jury. 
          The question remains as to whether the failure to object was intentional. On cross-examination, counsel elicited testimony from the mother that L.C. lied more than her four
other children, that L.C. had been caught shoplifting and was involved in other thefts, and
that she (the mother) had told the police that L.C. lied "about all of this." There is,
therefore, at least the possibility of a tactical reason for not objecting to the testimony. 
Ineffective assistance has not been shown. 
          James also contends counsel was ineffective because he did not object to testimony
about the nine prior CPS referrals and investigations. That same testimony, however, was
used to show the many years L.C. was asked to tell the CPS workers about any sexual
misconduct by anyone in the household, and that she had, each time, denied that any such
assault had occurred. 
          James also complains because his trial counsel did not object to proof that L.C.'s
mother and James were both users of cocaine. L.C.'s mother was a witness for the State. 
She testified that neither she nor James was working, but drank a twelve-pack of beer each
day and smoked crack cocaine. So far as drug use by the mother goes, this evidence
would cast considerable doubt on her credibility as a witness. However, this would clearly
be an objectionable extraneous bad act on the part of James. It is possible counsel did not
object to this testimony because he thought the value of this evidence as an attack on the
credibility of a witness for the State was greater than the harm it reflected on James. In
the absence of direct evidence of counsel's reasons for not objecting, there is an "imagined
strategic motivation."
          James also complains because counsel did not object to the admission of an exhibit
consisting of a page from L.C.'s medical records entitled "Instructions for . . . [L.C.]." These
instructions explain the type of examination L.C. received and the results that might be
revealed by the examination, including a diagnosis of syphilis or AIDS. The exhibit also
contains two paragraphs describing the psychological trauma of rape, explaining that it is
not L.C.'s fault for being sexually assaulted, and suggesting what might be done to help
her recover. We agree that the probative value of most of the content of this exhibit at the
guilt/innocence phase of the trial is questionable. However, it is not specifically directed
at James and, absent an explanation by counsel, we cannot say counsel's failure to object
constituted ineffective assistance. 
          James also contends counsel was ineffective because he did not recall L.C. to
testify about performing oral sex on another child. L.C. had testified outside the presence
of the jury that she performed oral sex on one of her stepbrothers. However, she also
testified that "[h]e asked me to do the same thing my step dad [sic] did." It would be
reasonable for counsel to decide not to recall her to provide this testimony, which could be
heard by the jury as evidence that James did the same thing.
          James finally contends counsel was ineffective because he did not object to a
statement in the court's charge that "penetration is complete however slight." There are
cases holding that this language is a proper instruction that may be used in such a charge,
so long as it does not advise the jury that penetration occurred or that the appellant had
done so at any time. See Wilson v. State, 905 S.W.2d 46, 48 (Tex. App.—Corpus Christi
1995, no pet.). Under these circumstances, we do not find that counsel was ineffective in
failing to object. 
          The contentions of ineffective assistance of counsel are overruled.
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      August 8, 2005
Date Decided:         September 29, 2005

Do Not Publish